of the United States, Numbers 10-4450 and 11-1703, Mr. Bar-David and Ms. DeAngelis. Good morning, Your Honors. May I reserve five minutes of rebuttal time? Sure can. Joshua Bar-David, co-counsel to Petitioner Mr. Wu. If I may start by explaining what we're not asking this Court to do. And we're not asking this Court to weigh the evidence presented and decide which is more compelling. Instead, what we are challenging is the manner in which the BIA weighed the evidence, or more accurately stated, the manner in which the BIA declined to consider Mr. Wu's evidence that he presented. The reasons provided by the BIA, there were about five or six of them, and time permitting, I'll go through them. You're talking about their opinion, right? I mean, it was before them, but you're talking about how they dealt with it in the opinion. Yes, Your Honor, yes. And it's our position that they didn't in fact weigh the evidence and decide which was more compelling, but in fact declined to consider the evidence for a variety of reasons. First, they declined to consider a challenge to the 2007 profile, upon which it based a lot of its factual conclusions. The reasons for declining to consider the challenge to the 2007 profile stated by the BIA was, in fact, that there has been no retraction by the State Department or clarification by the State Department of that profile. Yet this runs directly in the face of BIA precedence, most recently a matter of HLH in 2010, where it said that while the State Department reports are generally the best evidence of country conditions, the BIA and immigration judges are also obligated to consider any countervailing evidence. Let me ask you, is there any evidence that you can point to, even in terms of what you put in, that there's forced sterilization when the children are foreign born? I couldn't find any. Well, Your Honor, first there was the statement of the individual, I believe in pages 473, 477, who in fact was deported from the United States back to China. Oh, that was the, yeah, one was Fujian and one was, I guess, what, from Zhejiang Province? Yes, Your Honor. Because I'm looking at, I mean, for example, the document that you really honed in on was the Congressional Executive Commission on China, the report. And I'm looking through this, and I find Zhejiang Province mentioned once, and it talks there about a system for providing cash rewards if you have the one-child policy. And it goes and says 18 of the 31 provincial jurisdictions have either engaged in coercion or some form of coercion, and they name all 18 of them, and Zhejiang is not one of them. Yes, Your Honor. That's the 2009 Congressional. So we don't have any evidence that that's happening in this particular province, and even in those 18 we don't have any evidence that there you're having forced sterilization with regard to parents of children born abroad. Yes, Your Honor. There's two related issues, one being whether or not there's a distinction between children born abroad and children born in China. And, in fact, I would note the board in this instance concedes that the evidence indicates that children born abroad to Chinese nationals who don't have permanent residence overseas are still counted for the purposes of the one-child family planning policy. That issue was, in fact, conceded. And typically subjected to a fine. That was the board's finding, yes. But with respect to whether the children would be treated differently because they were born in the United States as opposed to being born in China, that issue was accepted by the board that, in fact, they would be counted as Chinese nationals for the purposes of the one-child. But if they're counted and then they're subjected to a fine, then the question arises whether the fine is severe enough to rise to the level of persecution. Does it not? Yes, Your Honor. And it would be our position, one, that there has been no actual weighing of the evidence that we've presented because the board declined to consider our evidence. The second point is that the 2009 profile indicates that the forced settlizations, I believe the word that they use, or coercive family planning practice is commonplace on page 19. With respect to Zhejiang province specifically, we have presented evidence relating to Zhejiang province outside of the 2009 profile, which is the affidavit of the individuals who were returned to China, in fact, subjected to the one-child family planning policy as well as. That's one anecdotal piece of evidence. But, I mean, that could be isolated. I mean, but you've got this report, which doesn't seem to incriminate this particular province at all, other than to reward people for, quote, good behavior, close quote. And, Your Honor, I would assert that this is where the opinion, the expert opinion offered by Dr. Sapio is highly relevant. She discusses the difficulty. The trouble is I think that that's been rejected by how many circuits now? The, well, we're, in this circuit, I don't believe it has been. No, but I'm just saying, but has it ever been given a whole lot of credence? Well, the issue in this case is that it hasn't been weighed by the board. They declined to credit her as an expert without providing an explanation. Even hers says on page 49 of the appendix, I'm quoting, there is no universal consensus on whether forced abortions and sterilizations are still used to implement family planning policy. Yes, that's, so, but, and again, the question is, is in this case, did the board, while there's, undoubtedly there is conflicting information in the record. Our position, however, is that the board did not simply weigh these two conflicting pieces of information that exist in the record and decide that, in this instance, the balance tipped in favor of the government as opposed to in favor of the respondent. Well, they did point out that Dr. Sapio, she wasn't an expert. I mean, they did deal with it a little bit. That's precisely the finding that we're challenging. In fact, they provide no explanation of why she isn't an expert. She has provided her CV in the record, which shows extensive travel and research in China. She's devoted her entire life to the study of China. She's a professor at a university on Chinese language as well as Chinese history. She has been published numerous times. These qualifications fit directly within the contours of what qualifies as an expert, as enunciated by the board in matter of DR of this year, I'm sorry, of July of 2011. Well, how does, as Judge Ambrose said, how did the fact that other courts have not credited her report fit into our analysis now? Well, I believe that more generally other courts have addressed the affidavit of Dr. Aird, where it was said that as opposed to Dr. Sapio, there are two separate reports. In this instance, the difference is that the courts addressing the more frequently the Aird affidavit said the board is free to weigh the two countervailing pieces of evidence and choose which one it finds more credible. That's not what the board did in this instance. They did not weigh the assertions of Dr. Sapio and find the State Department profile to be more credible. Instead, they simply declined to credit her as an expert and therefore consider her conclusions. You're saying this case is more like Zhang than Liu. Yes. And a remand is required because we can't have any confidence that the board actually did what it was supposed to do. Precisely, Your Honor. I'm going to ask the same question to your opposing counsel. Why don't you tell the panel what evidence in the record? You've cited one piece of evidence, namely that the court just summarily concluded that Sapio is not an expert. What other markers or signals in the record do you have to tell us that this is a Zhang case instead of a Liu case? Because if I remember Liu correctly, there wasn't a whole lot of analysis there. We just need some confidence that the board understood and apprehended what was put before it, right? Yes, Your Honor. And I would also assert that it's similar to the Guo case from 2004 in this court, which is that there's a misapplication of the legal standards as opposed to an issue of addressing the weighing of the evidence. All right. You can go address that after. Deal with the facts and then I'd like to hear what you have to say on that legal point, too. The additional evidence that we presented, for example, are printouts from official Chinese government webpages dealing with Zhejiang province with respect to the enforcement of the family planning policy. In fact, that's discussed by Dr. Sapio, I believe, on pages 73 to 75 of the record, where there was a Q&A by the provincial authorities posed on this official Chinese government website or official provincial government website asking, what do I do in this situation? And the response from the officials was, your child must be sterilized. In addition, there were various town regulations, and admittedly not from Mr. Wu's town, but from Mr. Wu's province, Zhejiang province, indicating that coercive family planning, or at least family planning measures are mandatory. They are an absolute requirement that there is no opportunity to see. Do any of those regulations provide that parents of foreign-born children should be forcibly sterilized? No, they do not. But again, Your Honor, we are creating a distinction in Chinese law where no such distinction exists and, in fact, has been acknowledged by the board in this instance that the children would be treated the same for the purposes of counting, for the purposes of the one-child family planning policy. I see that. My time is up. I have five minutes reserved for rebuttal. Thank you very much. Thank you. Ms. DeAngelis. Good morning. May it please the Court, Kate DeAngelis for the Attorney General. Just briefly, I just want to recount the procedure here because this is an alien who entered in 1992 fraudulently. Actually, that leads to a question. Do we look to 1994 or 2007 as to when there were changed, as to whether there were country conditions? I'm not sure. I believe under the Third Circuit's law that we do look to 1994. I believe that it is clear under Filch v. Gonzales, and it's true that the board did look to 2007. I believe that's true. However, I argue that there's been some additional learning since the brief. Additional learning, I would say. Your concession saved me a lot of time, so thank you. I do think that it's not an issue that makes a difference here. I think that the record amply supports that there's no change in country conditions since pre-1994, pre-2007. We have a 1981 account in the record. It's actually one of the more graphic accounts of a forced abortion in China that's been submitted by the alien, which occurred in 1981. So, you know, there's actually evidence in the record to show that things have gotten quite a bit better in that respect. And as the judges have already noted, there's really no evidence in the record pointedly showing that this petitioner has a threat of being sterilized in China. What about, would you address Mr. Bardavid's argument that this is more of a Zheng case, that we should remand it because we can't have any confidence that the board actually considered the newly processed evidence? Right, right. Well, I mean, I would disagree. I would say that this is a fairly lengthy board decision as far as board decisions go. They specifically noted particular evidence that was in the record. This court and virtually every other circuit has noted. And listing it is not going to be adequate in all cases, right? That's true. Listing here's all the things. And they provided, you know, they obviously are not going to discuss, you know, 800 pages in detail. They do pick out certain things to discuss. They discuss the Sapio report. This court very recently, within the past year or so, has considered the Sapio report and has considered whether this exact determination of the board was proper, and it's held that it was. The Third Circuit, this circuit, the Seventh, the Tenth, and the Eleventh have all considered the Sapio report. And these are all unpublished decisions. But they all arrive at the same conclusion. So the board did give analysis. What's the conclusion? The conclusion is that the board did not abuse its discretion in making the determination that it, you know, it could overvalue the State Department report, if it would. So I guess my answer to your question would be that this is a case that is in line with this circuit's recent determinations and pretty much the exact same issue. There's just no personalized evidence in this record. There's a lack of personal affidavits even to show where the even potentially tangentially relevant evidence comes from. These accounts that we've been discussing of these two gentlemen who were removed to China have appeared in other cases and other circuits, and this alien here has made no showing that he has any connection to where these documents came from or how they were entered into the record. I'm not sure it involves, is a fulcrum upon which our decision turns in any way. But I have to ask you because I, from an equitable standpoint, this seems terribly unfair. I mean, you indicated that he came into the country fraudulently in 92. Well, he's been allowed to stay here for lo these many years, and he's created a life here. He's a successful businessman. He's got four children who are American citizens. It's true, yes. What are we doing here? I mean. I mean, we do have. Isn't there something just terribly, terribly unfair about the way the government is treating this particular individual and those that might be similarly situated? Well, I mean, I would make a couple points in response to that. You know, these cases are all sympathetic. There are many, many cases. Well, not all of them. The typical case is someone who's committed crimes, sometimes fairly heinous crimes, who were taken a long time to deport. I mean, I don't see anything like that. Well, I don't know that that's the typical case. I think in my office we see many of these types of cases, and there is a broad spectrum of, you know. In fact, DHS is reconsidering many cases, and, you know, they're stopping proceedings in many cases. This is a situation where he's been here in this country. He's had a final order of removal. While his initial proceedings were pending, he had two children. He could have raised this claim 10 years ago. He could have raised it before the board made its decision on the merits. He chose not to, and he even moved to reopen seven years after the original board decision and didn't even raise this claim. I mean, he basically waited 10 years, and it's sort of a last-ditch effort to stay in this country. And, unfortunately, he's here in contravention of law. You know, whether it's sympathetic or not, that's the fact. So, you know, we have to carry out the law here. If the court has no further questions, I would just ask that the court affirm the board's decisions and deny the position for review. No further questions. Thank you. Mr. Clark, David. As you're coming up, one question that does jump out is that in the first motion to reopen, I guess it was filed in 07. Yes, sir. And it doesn't mention in that the coercive population control policy, does it? No, it does not. So if it was such a big thing, and I realize a lot of, you know, 500-plus pages have come in since then, it wasn't a big issue in 94 at the hearing. It wasn't even a big issue 13 years later on the first motion to reopen. That makes it very difficult to say that what's – it looks like what's happening is you've got someone who's desperate to stay here, and he's looking for any reason possible, but it clearly wasn't foremost in his mind at any time prior to 2009. It is certainly possible that you have an individual who is desperate to stay and will do anything possible to be able to remain and remain legally with his U.S. citizen family. That does not necessarily change the fact that he still may have a well-founded fear of future persecution, nor does it change the fact that the board has an obligation to consider the evidence that he presented in this instance. Under the law, under the statute provided, requires the board to make a determination of whether or not there has been changed country conditions and whether he's demonstrated prima facie eligibility for relief. In this instance, while the board listed the documents, it then provided the reasons for declining to reopen. They were absent retraction. They would not consider challenges to the State Department report. This flies in direct contravention with this court's law as well as BIA law that requires them to consider countervailing evidence. They declined to credit Dr. Sapio as an expert, yet provided no explanation of why they were declining to credit her as an expert. They said some of the documents were incomplete, but did not provide a citation for why this can be a basis to deny a motion to reopen, where the portions of lengthy U.S. government reports that were omitted were totally irrelevant to the claim. So the only portions that were included were the ones that related to the family planning policy, and the board didn't explain why these documents need to be complete. And finally, they said these documents are new and previously unavailable because they go back to 2002. As the government conceded and as the law provides, the relevant question is whether they were new and previously unavailable at the time of the prior hearing. Those were the entire reasons for the BIA declining to consider Mr. Wu's evidence. That does not constitute a consideration or an evaluation of whether there's been changed country conditions. Even if we were to remand for some reason saying that they didn't consider these sufficiently, do you really think there's any chance he has of prevailing? Yes, I would say that he does have a chance of prevailing. In fact, I have seen, albeit in limited instances, I have seen the BIA reopen under similar evidence. Did the BIA consider any of this on the merits? In this case, it's my position that the BIA has not considered the merits of the evidence presented. Again, the reasons provided were all legally flawed and they were not factually based, and they have the obligation at the very least to consider the evidence, the substance of the evidence, and explain why the 2007 profile or whatever other evidence they want to point to is more persuasive than the evidence that we cite to in our motion. And they have not done that, and that's all we're seeking before this Court. All right. Thank you. Thank you very much. Thank you to both counsel for well-presented arguments. Ms. DeAngelis, it sounds like you need to go home and get better. It's been a month. Good luck. Thank you.